IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

IN ADMIRALTY

AXIS REINSURANCE COMPANY,

    Plaintiff,

v.                                                  Case No.: 8:08-cv-569-T-27MSS

TRAVIS RESMONDO

    Defendant.
_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, STATEMENT OF UNDISPUTED FACTS AND MEMORANDUM OF LAW

Plaintiff, Axis Reinsurance Company ("AXIS"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56 and Local Rule 3.01, files this Motion for Summary Judgment, Statement of Undisputed Facts and Memorandum of Law in Support of Summary Judgment against Travis Resmondo ("Defendant"). As grounds therefore, AXIS states as follows:

    1.    On April 6, 2007, Defendant purchased a 2006, 40-foot Baja 405, Hull ID: AGC59007H506 (the "Vessel") from Thunder Marine. (Resmondo Dep. 8:3-13; Smith Aff., Ex. A, No. 000035 ¶2). Thereafter, AXIS and Defendant entered into a marine insurance contract, policy number S19446602 (the "Contract"). (Dkt. 1, Ex. A).

    2.    Prior to Defendant's purchase of the Vessel, Thunder Marine had used the Vessel as a demonstrator for approximately one year. (Resmondo Dep. 11:18-21; Smith Aff., Ex. A, No. 000035 ¶2).

3.      Before Defendant purchased the Vessel, he noticed scraping on the bottom of the Vessel's "engines."[1] (Resmondo Dep. 15:4-16; 17:2-8, 21-23).  Further, Defendant admitted that the bottom of the Vessel may have been scraped when he purchased it. (*Id*. 18:16-19:7).

4.      On Saturday, April 28, 2007, Defendant took the Vessel out for the first time. (*Id.* 25:16-20).  Defendant was not operating the Vessel at full speed and did not hit anything. (*Id.* 32:15-25).  Nor did Defendant ground the Vessel, beach it or touch any islands. (*Id.* 33:1-6).  Further, the Vessel's motors did not come into contact with anything. (*Id.* 33:8-12).  However, approximately one to two hours after Defendant began operating the Vessel, one of the Vessel's engines shut down. (*Id.* 29:14-13).  Defendant then turned the second engine off because it was overheating. (*Id.* 31:19-22).  Defendant eventually reached a marina, where he tied his Vessel to the dock and left a note, since no one at the marina was present. (*See id.* 32:1-3; 30:7-10).

5.      On Monday, April 30, 2007, the marina dock master called Defendant to warn him that his Vessel was sinking. (Ex. A, Interrog. Ans. No. 1).  Thereafter, the Sheriff's department called Defendant to inform him that his Vessel had sunk. (Resmondo Dep. 35:10-17).  Defendant does not know what caused the damage to his Vessel. (*Id*. 34:15-17; 36:25-37:6).  In his Answers to Plaintiff's Second Set of Interrogatories, Defendant admits that he did not see the Vessel after he secured it to the dock on April 28, 2007, and is not sure why the Vessel sank. (Ex. A, Interrog. Ans. No. 2).

6.      The sinking was actually caused by the failure of the port main engine assembly's gimbal ring resulting from wear and tear, gradual deterioration, and/or manufacturing defect. (Smith Aff., Ex. A, No. 000032-000033 ¶2; 000035).

---

[1] Defendant testified in reference to the Vessel's outboard stern drives. (See Exhibits 2 and 3 to Defendant's deposition.)

7. The conditions resulting in the sinking existed on the effective date of the Contract, as the Vessel "sustained a significant grounding early in its life. That occurred before Mr. Resmondo bought the boat. When the vessel was grounded, the gimbal ring on the port outdrive had been overstressed." (Smith Aff., Ex. A, No. 00034 ¶2). "The gimbal ring failure occurred over a period of time. It was not the result of a single event." (*Id.*, No. 000037 ¶6). Further, the gimbal ring was significantly corroded, and "[t]he visibly corroded area had been corroding for a significant period of time." (*Id.*, No. 000038 ¶1). This type of corrosion preexisted Defendant's purchase of the vessel. (*See id.*, No. 000041). "The subject vessel had been grounded. That grounding had been significant. That grounding was the probable cause of the gimball ring fracture. That grounding occurred some time early in the useful life of the vessel, **before Mr. Resmondo bought it**." (*Id.*, No. 000041 ¶4)(Emphasis added).

## SUMMARY JUDGMENT STANDARD

Plaintiff AXIS moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, and asks this Court to grant summary judgment in its entirety based on Defendant's failure to establish a genuine issue of material fact. The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

3

After the movant has met its burden under Rule 56(c), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). According to the plain language of the Federal Rules of Civil Procedure 56(e), the non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

In this case, Defendant cannot establish a genuine issue of material fact, and therefore, AXIS is entitled to summary judgment as a matter of law.

## MEMORANDUM OF LAW

**I.     Summary Judgment Should Be Granted In Favor of Plaintiff Because The Contract Expressly Excluded The Defendant's Loss.**

"In the Eleventh Circuit, the insured must show that the loss occurred during the coverage period and that the contract encompasses the loss." *Great Lakes Reinsurance (UK) PLC v. Soveral*, No. 05-80923-CIV, 2007 WL 646981 at *3 (S.D. Fla. Feb. 27, 2007)(citing *Banco Nacional De Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982)). "The insurer must then prove that an exclusion in the contract applies." *Id.* (citing *Hollywood Flying Service, Inc. v. Compass Ins. Co.*, 597 F.2d 507, 508 (11th Cir. 1979). In this case, the insured, Defendant Resmondo, cannot demonstrate that the contract encompassed the loss, as the

4

Vessel was damaged prior to Defendant's Contract with AXIS (Smith Aff., Ex. A. No. 000041 ¶4). Further, since the Contract specifically excludes Defendant's loss, AXIS is entitled to judgment against Defendant as a matter of law.

The Contract provides:

> Part D: Property Damage Coverage
>
> 2. EXCLUSIONS: We do not provide Property Damage coverage against or resulting damage from:
>
> a.  wear and tear, mechanical breakdown, gradual deterioration, corrosion, weathering, insect, mold, animals, marine life damage;
>
> b.  manufacturer's defects . . .

(Dkt. 1, Ex. A).

"To determine whether the loss as a result of the partial sinking is covered under the Policy, we must apply the doctrine of proximate cause." *St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.,* No. 06-60889-CIV, 2008 WL 4221635 at *3 (S.D. Fla. May 6, 2008). Here, it is undisputed that the Defendant's Vessel was significantly grounded prior to Defendant's purchase, and that "grounding was the probable cause of the gimball ring fracture" that sunk the Vessel. (Smith Aff., Ex. A, No. 000041 ¶4) As the sinking resulted from wear and tear, gradual deterioration, and/or manufacturer's defect, any and all damages arising from or relating to the sinking are excluded from coverage by the express terms of the Contract. (*See* Smith Aff., Ex. A, No. 000032-000033 ¶2; 000035).

Additionally, the Contract specifically excludes corrosion from its coverage. (Dkt. 1, Ex. A, Part D(2)(a)). In this case, the Vessel's gimbal ring was visibly corroded, and "had been corroding for a significant period of time" prior to its purchase by Defendant (Smith Aff., Ex. A, No. 000038 ¶1). Accordingly, Defendant's loss, due to wear and tear, gradual deterioration,

5

corrosion and/or manufacturer's defects are not covered under the Contract and AXIS is entitled to summary judgment as a matter of law.

WHEREFORE, AXIS respectfully requests this Court enter final judgment in favor of AXIS, finding damages arising from or relating to the sinking are not covered by the Contract.

**II.     Summary Judgment Should Be Awarded to Plaintiff Because Defendant's Losses Are Uncovered, Non-Fortuitous Losses.**

The Contract at issue is an all risk policy that only covers fortuitous losses. *See Great Lakes Reinsurance* at *2; *International Ship Repair and Marine Services, Inc., v. St. Paul Fire and Marine Insurance Company*, 944 F. Supp. 886, 892 (M.D. Fla. 1996). Defendant, as the insured, cannot prove that his loss was fortuitous. Pursuant to well-settled general maritime law, the Contract specifically excludes coverage for non-fortuitous or inevitable losses. *International Ship Repair and Marine Services, Inc., v. St. Paul Fire and Marine Insurance Company*, 944 F. Supp. 886 (M.D. Fla. 1996); *Continental Insurance Company v. Lone Eagle Shipping LTD.*, 952 F. Supp. 1046 (S.D.N.Y. 1997); *Insurance Company of North American v. United States Gypsum Company*, 678 F. Supp. 138 (W.D. Va. 1988); *Morrison Grain Company v. Utica Mutual Insurance Company*, 632 F.2d 424 (5th Cir. 1980); *Reisman v. New Hampshire Fire Insurance Company*, 312 F.2d 17 (5th Cir. 1963); *Mellon v. Federal Ins. Co.,* 14 F.2d 997 (S.D.N.Y. 1926).

The courts have defined fortuitous as "happening by chance or accident." *Capital Coastal Corp. v. Hartford Fire Insurance Co.,* 378 F. Supp. 163, 168 (E.D. Va. 1974). "A fortuitous event . . . is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass." *Morrison*, at 430 (citing the Restatement of Contracts Section 291, Comment (a)). "A loss is not considered fortuitous if it results from an inherent defect in the object damaged [or] from

ordinary wear and tear . . ." *International Ship Repair and Marine Services, Inc.*, at 892-93; *Great Lakes Reinsurance,* at *3.

In this case, any and all damages arising from or relating to the Vessel's sinking were inevitable, non-fortuitous losses.  Pursuant to the general maritime law, the Contract does not cover alleged damages arising from or relating to the sinking. *See St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.,* No. 06-60889-CIV, 2008 WL 4221635 *6 (May 6, 2008)("The partial sinking of the Vessel was not a covered fortuitous loss under the Policy. The proximate cause of the loss was the corrosion of the hose barb and corrosion is a specifically excluded cause of loss under the Policy.")

Here, the Vessel's sinking was inevitable because the port main engine's gimbal ring failed due to wear and tear, gradual deterioration, and/or manufacturing defect. (Smith Aff., Ex. A, No. 000032-000033 ¶2; 000035).  Defendant cannot contest that the Vessel sustained a significant grounding before he purchased it, and that when the Vessel was grounded, the gimbal ring on the port outdrive was overstressed.  (*Id.*, No. 00034 ¶2; 000041¶4).  This grounding caused the gimball ring fracture which led to the Vessel sinking.  (*Id.*, No. 000041 ¶4).  Further, the gimbal ring failure "occurred over a period of time.  It was not the result of a single event." (*Id.*, No. 000037 ¶6).  Since Defendant only took the Vessel out once, a few weeks after his purchase, it was impossible for the damage to have occurred after his purchase. (*See* Resmondo Dep. 25:16-20).  Consequently, it is impossible that the Vessel incurred the damage that caused its sinking after Defendant entered into his contract with AXIS.

Likewise, the gimbal ring had been corroding for "a significant period of time." (*Id.*, No. 000038 ¶1).  Accordingly, the Vessel was already damaged before Defendant purchased it, and

7

its sinking was an inevitable, non-fortuitous loss. As a matter of law, Defendant's non-fortuitous loss is not covered by his Contract with AXIS.

In this case, Defendant has presented no evidence, expert or otherwise, to counter the findings and opinions of AXIS' expert witness. In fact, Defendant is lacking even a "mere 'scintilla' of evidence" showing that the jury could reasonably find in his favor. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Defendant admitted that he had no idea what cuased his motor damage at the time it occurred, and the only facts he knows are those that were told to him by surveyors and his attorney. (Resmondo Dep. 34:11-24). Further, Defendant's understanding that the gimbal ring broke comes from Mr. Smith's report, and that is the only information he has regarding the damage. (Resmondo Dep. 34:11-35:2). Therefore, as a matter of law, AXIS is entitled to summary judgment against Defendant.

WHEREFORE, AXIS respectfully requests this Court enter final judgment in its favor, finding damages arising from or relating to the sinking are non-fortuitous and thus not covered by the Contract.

### III. Defendant Breached The Implied Warranty of Seaworthiness, Rendering The Contract Void As A Matter Of Law.

The American rule imposes an absolute warranty of seaworthiness which attaches at the insurance policy's inception, with or without the insured's knowledge. *Employers Insurance of Wausau v. Occidental Petroleum Co.*, 978 F.2d 1422 (5th Cir. 1992). "It is not necessary to inquire whether the owners acted honestly and fairly in the transaction; for it is clear law that, however just and honest the intentions and conduct of the owner may be, *if he is mistaken in fact*, and the vessel is in fact not seaworthy, the underwriter is not liable." *Id.* "[I]f the vessel is unseaworthy . . . at the time the insurance attaches, the breach absolutely voids the policy." *Gulfstream Cargo, Ltd. V. Reliance Insurance Co.*, 409 F.2d 974 (5th Cir. 1969).

An insurer is not required to return premiums when seeking a declaratory judgment that it is entitled to void the policy. *Transportation Cas. Ins. Co. v. Soil Tech Distributors, Inc*., 966 So.2d 8 (Fla. 4th DCA 2007); *Scottsdale Ins. Co. v. Wave Technologies Communications, Inc.,* No. 8:07-cv-1329-T-30MAP, 2008 WL 4710596 at *4 (M.D. Fla. Oct. 23, 2008). "An insurer may want to know whether a policy is, in fact, voidable before seeking to rescind the policy, and a declaratory judgment is an appropriate means to that end." *Transportation Cas. Ins. Co.*, at *10.

It is undisputed that the gimbal ring was fractured at the time Defendant purchased the Vessel. (Smith Aff., Ex. A, No. 000032-000033 ¶2; 000035). The existing fracture in the gimbal ring rendered the Vessel unseaworthy. As the fracture predated the effective date of the policy, the policy is void *ab initio*.

WHEREFORE, AXIS respectfully requests this Court enter final judgment in its favor, finding the Vessel was unseaworthy and the Contract was void from inception.

**WHEREFORE**, Plaintiff Axis Reinsurance Company respectfully requests this Court enter Summary Judgment in its favor, against Travis Resmondo, pursuant to Fed. R. Civ. P. 56, and award any other relief the Court deems just and proper.

    Respectfully submitted,

/s/ Michael J. Bradford_____
**MICHAEL J. BRADFORD**
Florida Bar Number: 184314
**ROBERT B. BIRTHISEL**
Florida Bar Number: 906654
Hamilton, Miller & Birthisel, LLP
100 S. Ashley Drive, Suite 1210
Tampa, Florida 33602
Tel: 813-223-1900; Fax: 813-223-1933
mbradford@hamiltonmillerlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been submitted via CM/ECF to David F. Pope, Esq., Fowler White Boggs Banker, P.A., P.O. Box 1438, Tampa, Florida 33601 on this 7th day of November, 2008.

                                          <u>/s/ Michael J. Bradford</u>
                                          Attorney