IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

AXIS REINSURANCE COMPANY,

    Plaintiff,

v.                                         Case No. 8:08-cv-569-T-27MSS

TRAVIS RESMONDO,

    Defendant.
_____/

## RESPONSE OF TRAVIS RESMONDO TO THE MOTION OF AXIS REINSURANCE COMPANY FOR SUMMARY JUDGMENT

Travis Resmondo, Defendant/Counter-Claimant (hereinafter "Resmondo"), submits this his Response to the Motion of Axis Reinsurance Company (hereinafter "Axis"), which contends that the hull/property insurance policy Axis had issued to Resmondo did not provide coverage for an incident involving the insured vessel.

I.    **LEGAL STANDARD APPLICABLE TO A MOTION FOR SUMMARY JUDGMENT:**

Resmondo contends that Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to Summary Judgment as a matter of law." See Rule 56(c), Federal Rules of Civil Procedure. An issue is genuine if the evidence is such that a reasonable finder of fact could return a verdict for the non-moving party. See Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it may affect the outcome of the suit under the governing law. See

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there are no genuine issues of material fact that should be decided at trial. See Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004). When a moving party has discharged its burden, the non-moving party must then, by its own affidavits, or by reference to the record, specify facts showing that there is a genuine issue for trial. See Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. See Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant Summary Judgment. See Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

Resmondo contends that genuine issues of material fact exist as to whether the Axis hull/property insurance policy provides coverage for the incident at issue, and that Axis is not entitled to entry of a Summary Judgment on the coverage issue as a matter of law.

## II. THE CONTRACT OF INSURANCE AND THE LAW APPLICABLE TO THAT CONTRACT:

As detailed in the Axis Complaint for Declaratory Relief, this dispute concerns whether the insurance policy which Axis issued to Resmondo (and which is attached as an exhibit to Plaintiff's Complaint) provided coverage for the sinking of the insured vessel on April 30, 2007, and the damages, costs, and expenses, arising from that sinking.

2

Resmondo is in agreement with Axis that the policy of insurance it issued to Resmondo was a marine insurance policy and that as a marine contract, disputes arising under that policy are subject to the rules and practice of general maritime law generally applicable to marine insurance. In support of its Motion for Summary Judgment, Axis has filed a Statement of Undisputed Facts, the deposition testimony of Resmondo, and exhibits to that deposition, and the affidavit of Axis marine surveyor who investigated the incident, Jim Smith. In response to Axis, and incorporated in this Response, Resmondo has filed his affidavit detailing the factual circumstances of his purchase of the vessel, and the incident, and excerpts from his deposition which Resmondo believes are relevant to the issues of fact and law to be decided.

With respect to the rules of law applicable to this marine insurance dispute, the record establishes that the Axis policy was issued in Florida, to a Florida resident (Resmondo), and provided hull/property insurance coverage to a vessel located in Florida. In Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310 (1955), the Supreme Court, while recognizing that marine insurance disputes fell within maritime contract jurisdiction, ruled that regulation of marine insurance and marine insurance disputes would, absent a controlling Federal maritime rule, be left to State regulation and practice. See also Albany Ins. Co. v. Kieu, 927 F.2d 882 (5th Cir. 1991).

In circumstances where a marine hull/property insurance policy is issued in Florida to a Florida resident for coverage on a vessel located in Florida, the case authorities are in agreement that, under the rule of the Wilburn Boat case, and absent conflict with a controlling and established maritime rule, the insurance law of Florida will be applied. See Irwin v. Eagle Star Ins. Co., 455 F.2d 827 (5th Cir. 1972), Windward Traders, Ltd. v. Fred S. James & Co. of New York, 855 F.2d 814 (11th Cir. 1988), and International Ship Repair & Marine Services, Inc. v.

St. Paul Fire & Marine Ins. Co., 944 F.Supp. 886 (M.D. Fla. 1996). Under the law of Florida applicable to marine insurance disputes, Resmondo notes that the Axis insurance policy, and in particular the hull/property provisions of that policy, fall within the definition of "wet marine and transportation insurance" found at Florida Statute Section 624.607(2)(a). Of relevance to the instant dispute, Resmondo notes that Florida Statute Section 627.401(3), dealing generally with insurance contracts, singles out wet marine and transportation insurance, and notes that three particular provisions of the Florida Statutes generally applicable to insurance contracts apply to wet marine and transportation insurance. Of particular concern to the instant dispute, Resmondo notes that Florida Statute 627.409(2), dealing with Representations in Application; Warranties, states the following:

> "A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application thereof, does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured."

Resmondo contends that an examination of the terms and conditions of the Axis insurance policy, particularly the hull – property provisions, under the factual circumstances of the incident at issue, will demonstrate that not only do genuine issues of material fact exist between the parties, but that, based on the particular grounds alleged by Axis in their Motion for Summary Judgment, Axis is not entitled to the entry of judgment as a matter law.

### III. **THE AXIS POLICY**:

From the record herein, it is established that a "Sea-Safe Seafarer Yacht Policy" was issued on April 6, 2007 (for a term of one year) to Travis Resmondo, and that as part of the coverage, that policy included hull – property damage insurance on Resmondo's vessel, a 2006

40' Baja Pleasure Vessel. The record herein further establishes that Resmondo paid the premium required to obtain the insurance coverage ($5,792), and that the underwriter/insurer on the policy was Axis Reinsurance Company.

In Part A: General Provisions of the policy, the parties to the insurance contract agreed:

> "9. Conformity to State Law: When a provision of this policy is in conflict with the applicable law of the state in which this policy is issued, the law of the state shall apply."

As to the terms and conditions of the policy concerning hull/property insurance, the policy at Part D: Property Damage Coverage, states the following:

> "1. Perils Insured Against. We will provide coverage for all accidental direct physical loss or damage to your insured property, except as specifically excluded in this policy.
>
> 2. Exclusions: We do not provide property damage coverage against or resulting damage from:
>
> a. Wear and tear, mechanical breakdown, gradual deterioration, corrosion, weathering, insect, mold, animals, marine life damage;
>
> . . ."

In its Motion for Summary Judgment, Axis contends that with respect to the incident at issue, that Resmondo violated the wear and tear exclusion noted above, that the sinking of the insured vessel was not a fortuitous loss, and/or that the insured vessel was not seaworthy at the time the insurance attached.

Resmondo will address the specific Axis contentions below, but notes that the provision of the Axis policy providing property/hull damage coverage must be considered "all risks coverage" under the applicable case authorities. See Morrison Grain Co. v. Utica Mutual Ins.

5

Co., 632 F.2d 424 (5th Cir. 1980) and <u>International Ship Repair & Marine Services, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 994 F.Supp. 886 (M.D. Fla. 1996).

Under an "all risks" hull insurance policy, such as the Axis policy, the burden is on Resmondo to prove facts sufficient to establish coverage. Those facts normally are that the policy was issued, that the loss occurred during the term of the policy, and that the loss was due to a fortuitous event. In the face of a prima facie showing by the insured, in an all risks policy, the burden is on the insurer to prove facts establishing an exclusion to the coverage. See <u>Utica Mutual</u> (supra) and <u>International Ship Repair</u> (supra). While it is not necessary for the Court to decide, in ruling on the Axis Motion for Summary Judgment, whether Resmondo has met his evidentiary burden to establish his Counterclaim, the Court will need to consider whether, with respect to the alleged exclusions from coverage, Axis has satisfied not only its burden of proof, but that no genuine issues exist with respect to either those facts or the applicable law.

### IV. **WEAR AND TEAR/CORROSION EXCLUSION:**

From the record herein, particularly the deposition and affidavit testimony of Travis Resmondo, some factual circumstances concerning the sinking of Resmondo's vessel on April 30, 2007, can be determined. These factual circumstances are:

1. That Resmondo purchased the 40' Baja Pleasure Vessel on April 6, 2007 from Thunder Marine, Inc., a Baja dealer in St. Petersburg, Florida (and on the same date, the Axis insurance policy went into effect);

2. On Aprl 28, 2007 (a Saturday), Resmondo made his initial and only voyage on the insured vessel;

3. Between April 6 and April 28, the insured vessel was in the possession, custody and control of Thunder Marine;

4. Prior to his purchase, Thunder Marine advised and Resmondo was aware that the 40' Baja Pleasure Vessel had been used as a "demonstrator" by Thunder Marine;

5. Although he inspected and made sea trials on the 40' Baja Pleasure Vessel, Thunder Marine did not advise and Resmondo did not observe any damage, cracks, fractures, or other damage to the vessel's main engines, and in particular to the out-drives (or the gimbal rings internal to the out-drives);

6. On April 28, with three guests aboard, after an initial pre-departure inspection (during which the vessel appeared to be in proper condition), Resmondo departed from the Tierra Verde Marina for a pleasure voyage in the Gulf of Mexico;

7. One or two hours into that voyage, something "popped" in the vessel's main engines or out-drives, both engines stopped, and when unable to obtain tow assistance, Resmondo operated the vessel (on one engine at idle speed) and docked it at the Galati Marine factility on Anna Maria Island;

8. When he left the vessel at the Galati Marine Dock, it appeared to be in normal condition, afloat and on an even trim, and Resmondo left contact information for the Galati Marine dock master in case questions should arise as to why the vessel was at that dock;

9. Resmondo and the dock master at Galati Marine spoke by telephone on Sunday, April 29, 2007, but the dock master did not report or advise Resmondo that his vessel was taking on water, in distress, or in danger of sinking;

10. Around 7:00 a.m. on Monday, April 30, 2007, Resmondo first received a call from the Galati Marine dock master, and then from the Manatee County Sheriff's Office, advising that his vessel was taking on water and sinking; and

11. Thereafter, with assistance from Sea Tow and Galati Marine, Resmondo's vessel was re-floated, any pollution discharged from the vessel contained and cleaned up, and the vessel placed in dry storage at Galati Marine for inspection.

The factual information presently before the Court concerning events after April 30, 2007 is contained in the report prepared by the Axis marine surveyor, Jim Smith. Of particular relevance to Mr. Smith's report, are Mr. Smith's report summary, on page 8 of his report, his analysis on page 8 and 9 of his report, his findings, particularly No. 7 and 8 on page 19 of his report, and his conclusions and opinions on pages 19 and 20 of his report.

From the record herein, Resmondo contends that there is no evidence whatsoever that any fault, neglect, or want of care on his part caused or contributed to either an initial fracture or a subsequent fracture of the gimbal ring on the port main engine out-drive. According to Axis surveyor Smith, the initial fracture in the gimbal ring of the port main engine out-drive was not a manufacturing or design defect, but instead was caused an unknown casualty grounding or collision that occurred sometime before Resmondo purchased the vessel. In addition, surveyor Smith in his report states an opinion that while the vessel operated normally with the initial fracture, on April 28, 2007, the gimbal ring on the port main engine out-drive completely fractured, which ultimately led to sea water entering the vessel.

The evidence in the record, from both Resmondo and surveyor Smith, supports a finding that the initial fracture and subsequent fracture in the gimbal ring of the port main engine out-drive, rather than being due to wear and tear, normal corrosion, or ordinary usage of the vessel, instead constituted a latent defect which, given the "all risks" coverage of the Axis policy, would be a covered event. See Walker v. The Travelers Indemnity Co., 289 So.2d 864 (La. App. 1974). As an additional response to the Axis contentions concerning the wear and tear/corrosion

exclusion, Resmondo notes that under the provision of the Florida Insurance Code cited above, even if it were concluded that Resmondo had violated that exclusion, it would not provide a defense to Axis or permit them to deny coverage unless Axis could establish that the wear and tear or corrosion "increased the hazard by any means within the control of the insured". Since Resmondo had no information or knowledge that the gimbal ring for the port main engine out-drive had been fractured (or that the vessel had been involved in a grounding or other marine incident prior to his purchase), and the vessel otherwise appeared to be in normal condition prior to, at the time of purchase, and during its initial (and only) voyage, there is a complete absence of any evidence that Resmondo breached the exclusion in the Axis policy and/or that such a breach or violation increased the hazard, in this instance the sinking of the vessel by any means within Resmondo's control.

In view of the foregoing, Axis' contention that it can decline coverage for the sinking of Resmondo's vessel based on breach of a policy exclusion concerning wear and tear/corrosion is improper under both the facts and the law, and Axis' Motion for Summary Judgment based on such a contention should be denied.

V.     **WAS THE INCIDENT AT ISSUE A NON-FORTUITOUS LOSS:**

Axis' second contention is that due to the "pre-existing" initial fracture in the gimbal ring of the port main engine out-drive, the sinking of Resmondo's vessel on April 30, 2007 was not a fortuitous event, as that term is used in marine insurance.

Resmondo does not dispute that the case authorities which have considered claims under "all risk" marine policies have recognized that an insured will be required to show that the loss or damage was fortuitous. See Morrison Grain Co. v. Utica Mutual Ins. Co., 632 F.2d 424, 431 (5th Cir. 1980). The ruling of this Court in International Ship Repair & Marine Services, Inc. v.

St. Paul Fire & Marine Ins. Co., 944 F.Supp. 886 (M.D. Fla. 1996), is relevant and instructive as to exactly what is necessary to establish whether a particular loss is fortuitous. In the International Ship case, the Court noted the following:

> "The court agrees. In an action under an all risk policy, the insured has typically been required to show that the loss or damage was fortuitous. . .
>
> . .
>
> "In contrast, a loss is not considered fortuitous if it results from an inherent defect in the object damaged, from ordinary wear and tear, or from the intentional misconduct of the insured. However, loss due to the negligence of the insured or his agents has generally been held to be fortuitous and, absent express exclusion, is covered by an all risks policy. ...
>
> . . .
>
> In any case, the burden of demonstrating a fortuitous event is not an onerous one. More importantly, courts which have considered the question have rejected the notation that the insured must show the precise cause of loss to demonstrate fortuity. . ."
> [Id, 892-893].

From the record herein, in particular the survey report and opinions of Axis surveyor Smith, it appears that the initial fracture in the gimbal ring of the port main engine out-drive, and the subsequent complete fracture, were not due to inherent defects in the gimbal ring itself, but instead were due to a marine incident involving the insured vessel which occurred prior to Resmondo's ownership, such as a collision or grounding. In addition, there is no evidence that the initial fracture or the subsequent complete fracture in the gimbal ring of the port main engine out-drive were due to ordinary wear and tear, or from the intentional misconduct of Resmondo. While, as will be noted below, Resmondo disputes that the April 28, 2007 fracture of the gimbal ring of the port main engine out-drive was the proximate cause of the April 30, 2007 sinking of

the insured vessel, no factual or legal basis exists to support Axis' contention that coverage for the sinking of the Resmondo vessel can be declined because the sinking was non-fortuitous.

VI. **BREACH OF AN INITIAL WARRANTY OF SEAWORTHINESS**:

In its third contention, Axis alleges that the initial fracture in the gimbal ring of the port main engine out-drive existed on the date the Axis policy became effective (April 6, 2007), and thereby a warranty of seaworthiness recognized under general maritime law at the inception of a marine insurance policy was breached.

Although subject to question in the case authorities, Resmondo does not dispute that under the rules of general maritime law applicable to marine insurance in general, and hull/property insurance on vessels in particular, a warranty exists that the vessel should be in a seaworthy condition at the time the insurance becomes effective. However, in Employers Ins. of Wausau v. Avondale Shipyards, 1992 AMC 477 (E.D. La. 1991) and Tropical Marine Products, Inc. v. Birmingham Fire Ins. Co. of Pennsylvania, 247 F.2d 116 (5th Cir. 1957), it was recognized that the seaworthiness warranty is not absolute, and that breach of a warranty of seaworthiness at the inception of the policy will void the policy only if the ship owner has prior knowledge of the unseaworthy condition. (See Employers Ins. of Wausau at 482).

Since there is no evidence in the record that Resmondo had any knowledge on April 6, 2007 that his vessel was not in a seaworthy condition, Resmondo contends that the Axis argument with respect to breach of that warranty is improper.

Even assuming that the warranty of seaworthiness at the inception of the policy is absolute, and does not have any connection to knowledge or lack of knowledge on the part of the vessel owner, while there is evidence that the initial fracture of the gimbal ring for the port main engine may have constituted a latent defect on April 6, 2007, there is no evidence in the record

11

that on that date, the vessel was not reasonably fit for its intended use as a private pleasure vessel. To the contrary, the evidence in the record establishes that the vessel Resmondo purchased had been used by the selling dealer as a demonstrator for some period of time prior to the date of Resmondo's purchase, that it was operated on various sea trials by the selling dealer without reported incident or difficulty, that the vessel appeared to be in proper and normal operating condition, and operated properly and normally on April 28, 2007, until such time as the gimbal ring on the port main engine out-drive completely fractured. In addition, the report and opinions of Axis surveyor Smith confirm the vessel's normal operations prior to April 28, 2007 (other than a suspected marine incident or grounding at some unknown date prior to the Resmondo purchase). Other than conjecture by Axis surveyor Smith that the initial fracture in the gimbal ring of the port main engine out-drive existed on the date the Axis policy went into effect, there is no evidence in the record that the Resmondo vessel was not reasonably fit for its intended use on that date.

In view of the foregoing, the Axis contention that the insurance policy was void ab initio due to breach of a warranty of seaworthiness at the inception of the policy should be denied.

## VII.   THE SINKING OF THE INSURED VESSEL:

In connection with consideration of the contentions advanced by Axis in its Motion for Summary Judgment, Resmondo notes that from the record herein, it can be established that although it is likely the gimbal ring on the port main engine out-drive of the Resmondo vessel completely fractured while the vessel was at sea on April 28, 2007, the vessel did not sink on that date. In fact, although not without difficulty, Resmondo operated the vessel on the starboard engine and secured it to the dock at Galati Marine on Anna Maria Island. Although he did not connect the vessel to shore power at the dock at the Galati Marine facility, when Resmondo left

the vessel on the afternoon of April 28, 2007, it was floating normally and did not appear to be taking on water or in danger of sinking. Despite telephone communications on the next day, April 29, 2007, Resmondo did not receive any information from the dock master at Galati Marine, or any other source, that the vessel was taking on water and/or sinking on that date. Instead, on the morning of April 30, 2007, a day and a half after the fracture of the gimbal ring on the port main engine, it was reported to Resmondo by the dock master at Galati Marine that the vessel was taking on water and sinking. Clearly the incident at issue, the sinking of April 30, 2007, did not occur immediately upon the fracture of the gimbal ring on the port main engine out-drive. Instead, as detailed in the report of Axis surveyor Smith, "the bilge pump de-watered the vessel until its battery was exhausted and then it quit. The vessel continued to flood. The vessel sank." (Smith report – page 20). While the presence of an initial and/or subsequent fracture in the gimbal ring of the port main engine out-drive is a subject of interest with respect to the Axis Motion for Summary Judgment, the casualty or incident at issue occurred on April 30, 2007 when the vessel sank, and based on his survey report, Axis surveyor Smith believes that the sinking occurred when the vessel's batteries went dead and the bilge pumps stopped operating.

## VIII. **CONCLUSION**:

In view of the foregoing, and the record herein, the Motion of Axis Reinsurance Company for Summary Judgment should be denied.

Respectfully submitted,

*/s/ David F. Pope*
David F. Pope – FBN: 164452
BANKER LOPEZ GASSLER P.A.
501 East Kennedy Boulevard
Suite 1500
Tampa, FL 33602
Telephone: (813) 221-1500
Facsimile: (813) 222-3066
dpope@bankerlopez.com
Attorneys for Defendant, Travis Resmondo.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 5, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following: Michael J. Bradford, Esquire and Robert Birthisel, Esquire, of Hamilton, Miller & Birthisel, LLP, 100 S. Ashley Drive, Suite 1210, Tampa, Florida 33602, Attorneys for Plaintiff.

*/s/ David F. Pope*
David F. Pope