IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

IN ADMIRALTY

AXIS REINSURANCE COMPANY,

    Plaintiff,

v.                                                        Case No.: 8:08-cv-569-T-27MSS

TRAVIS RESMONDO

    Defendant.

_____/

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Axis Reinsurance Company ("AXIS"), by and through undersigned counsel, pursuant to Local Rule 3.01 and Order of this Court granting Plaintiff leave to file a reply, files this Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment and states as follows:

1. Defendant filed his Response to AXIS' Motion for Summary Judgment on December 5, 2008. (Dkt. 37).

2. This Court granted Plaintiff leave to reply to Defendant's Response. (Dkt. 44).

3. Among other claims, Plaintiff has asserted a claim against Defendant for Breach of the Implied Warranty of Seaworthiness. (Dkt. 1, Count III).

4. Defendant admits that general maritime law requires that a vessel be seaworthy at the time the insurance becomes effective. (Dkt. 37, p. 11 ¶2).

**MEMORANDUM OF LAW**

I. **Federal Maritime Law Applies Because the Warranty of Seaworthiness Is An Established Federal Rule.**

In Defendant's response, he admits that his agreement with Plaintiff was a marine insurance policy and that disputes arising under such policy are subject to general maritime law. However, Defendant contends that Florida law applies to this case rather than federal law. (Dkt. 37, p. 3). Based on the undisputed facts of this case, it is clear that federal law applies. Defendant has cited to case law which states, in pertinent part, "[w]e hold that the trial court erred when it applied Florida law. State law cannot be utilized to interpret a warranty in a marine insurance contract if the federal judiciary has established a rule as to the interpretation of that type of warranty." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Aetna Ins. Co. v. Dudney*, 595 So.2d 238, 239 (Fla. 4th DCA 1992)(reversing the trial court's decision because it erroneously applied Florida law instead of federal admiralty law).

Defendant's argument that Florida law applies fails because the warranty of seaworthiness is an absolute warranty under federal admiralty law. *D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.,* 608 F.2d 145, 147 (5th Cir. 1979); *The Connecticut Indem. Co. v. Palivoda*, No. 8:04CV1044T-24MSS, 2004 WL 3661069 at *3-4 (M.D. Fla. Aug. 24, 2004)(stating that the absolute implied warranty of seaworthiness applies the instant the policy comes into effect. To succeed in asserting this warranty, "the insurer need not demonstrate that the insured had knowledge of the unseaworthy condition nor that the insured was somehow at fault in not discovering the unseaworthy condition. It is enough to discharge the insurer . . . if the vessel is in fact not seaworthy at the inception of the policy"); *Employers Ins. of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1436 (5th Cir. 1992)("[T]here is nothing in matters

of insurance of more importance than the implied warranty that a ship is seaworthy when she sails on the voyage insured . . . It is not necessary to inquire whether the owners acted honestly and fairly in the transaction; for it is clear law that, however just and honest the intentions and conduct of the owner may be, *if he is mistaken in fact,* and the vessel is in fact not seaworthy, the underwriter is not liable").

The duty of seaworthiness is implied in <u>every</u> marine insurance policy. *The Caledonia,* 157 U.S. 124, 132, (1895). In this case, it is undisputed that Plaintiff's breach of the implied warranty of seaworthiness claim is governed federal admiralty law, not Florida law. Under federal law, Defendant breached the warranty of seaworthiness, which bars his recovery under the policy as a matter of law.

**II. Even if Florida Law Applied, Defendant's Breach or Violation Increased the Hazard By Means Within Defendant's Control, Barring Recovery Under Florida Law.**

As addressed in Defendant's Response to Plaintiff's Motion for Summary Judgment, Fla. Stat. §627.409 states:

> (2) A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor does not void the policy or contract, or constitute a defense to a loss thereon, ***unless such breach or violation increased the hazard by any means within the control of the insured.***

(Emphasis added).

In *AXA Global Risks (UK), Ltd. V. Webb,* No. 6:99-CV-124-ORL-19B, 2000 WL 33179617 (M.D. Fla. July 28, 2000), this Court granted summary judgment to AXA Global Risks in its declaratory judgment action after the defendant relied on Fla. Stat. §627.409(2) in his opposition. In that case, "[a]ssuming that section 627.409(2) is applicable to this dispute, the Court does not find that it alters the result in the case because the breach and misrepresentation

3

established here did 'increase the hazard' insured against . . . Here, at the time the vessel sank, the insured had represented that it would be on shore, and it was not. Thus, section 627.409(2) is not a bar to AXA's right to have the policy declared void." *Id.* at *2. Similarly, in this case, Defendant represented that his Vessel was seaworthy, and it was not. This increased the hazard by means within the control of Defendant. Accordingly, even if Florida law applied in this case, Defendant's breach still renders the policy void.

Due to Defendant increasing the hazard under his control, "Plaintiff is not precluded from denying coverage under §627.409(2) Fla. Stat." *See Fireman's Fund Insurance Co. v. Cox*, 742 F. Supp. 609, 611 (M.D. Fla. 1989)(holding that the presence of one or two additional crew members increased the risk the insurance company agreed to bear and granting Plaintiff's motion for summary judgment against the insured).

In this case, it is undisputed that Defendant purchased the Vessel in a defective condition, with a fractured and severely corroded gimbal ring that had weakened over time. (Dkt. 31, Ex. A). Prior to Defendant's purchase of the Vessel, Thunder Marine had used the Vessel as a demonstrator for approximately one year. (Resmondo Dep. 11:18-21; Dkt. 31, Smith Aff., Ex. A, No. 000035 ¶2). Before Defendant purchased the Vessel, he noticed scraping on the bottom of the Vessel's engines. (Resmondo Dep. 15:4-16; 17:2-8, 21-23). Only one to two hours after operating the Vessel, Defendant experienced engine failure. (Dkt. 38 ¶11). Defendant docked his Vessel in its defective state overnight for two nights, and then it sunk. (Dkt. 38 ¶14-19). Defendant's actions in docking the Vessel at Galati Marine for two nights in its defective condition certainly increased the hazard by means under Defendant's control. Accordingly, even if Florida statutory law applies, Defendant's actions bar him recovery as a matter of law.

4

### III.     The Fracture to the Gimbal Ring Was Not A Latent Defect As It Was The Result of Gradual Wear And Tear and Corrosion.

Defendant relies on a Louisiana state court case from 1974 to contend that the sinking was due to a latent defect in the Vessel and that such defect is covered under Defendant's policy with AXIS. (Dkt. 37, p. 8 ¶11). Defendant's yacht policy contains no Inchmaree clause covering latent defects. On the contrary, Defendant's policy specifically excludes the Vessel's defects. (Dkt. 1, Ex. A ¶2).

Further, Defendant's argument is not supported by law. "A true latent defect is not a gradual deterioration . . ." *Reisman v. New Hampshire Fire Ins. Co.*, 312 F.2d 17 (5th Cir. 1963); *Sipowicz v. L.R. Wimble*, 370 F.Supp. 442, 449 (S.D.N.Y. 1974). "It is a defect in the item itself, not a lack of maintenance or a gradual deterioration." *Underwriters at Lloyds v. LaBarca*, 106 F.Supp.2d 205, 210 (D.P.R. 2000).

Defendant's theory that there was a latent defect is made up from whole cloth. Expert John Smith specifically opined, based on undisputed evidence, that the subject vessel had been grounded, the grounding was significant, the grounding was the probable cause of the gimbal ring fracture, and the grounding occurred before Defendant bought the vessel. Defendant has failed to introduce any evidence whatsoever to controvert expert John Smith's findings and report at Docket 31, Exhibit A. Therefore, it is undisputed that the sinking was caused by the failure of the port main engine's gimbal ring. (Dkt. 31, Smith Aff., Ex. A). Indeed, Defendant states in his Response that "it appears that the initial failure in the gimbal ring . . . were not due to inherent defects in the gimbal ring itself, but instead were due to a marine incident involving the insured vessel which occurred prior to Resmondo's ownership . . ." (Dkt. 37, p. 10). Accordingly, the Vessel did not sink due to a latent defect as a matter of law. Furthermore, it is undisputed that the policy expressly excludes manufacturer's defects.

5

Finally, Defendant contends that the Vessel sank because the bilge pumps stopped dewatering the Vessel until the batteries died. (Dkt. 37, p. 13). Mr. Smith expressly stated that the Vessel "sank *due to* the significant failure of the port outdrive . . . caused by wear and tear over time. The chain of events that lead to the sinking began with the partial fracture of the port outdrive gimbal ring." (Emphasis added)(Dkt. 31, Ex. A. No. 0000045). Accordingly, Defendant's attempt to mischaracterize Mr. Smith's expert opinion fails. Defendant's absurd argument misses the point. The failure of the bilge pumps to continue dewatering the Vessel did not <u>cause</u> the Vessel to take on water. Rather, the bilge pumps served to pump the water that was entering the Vessel for the reasons described by Mr. Smith. As Defendant acknowledges, he did not connect the Vessel to shore power, so the bilge pumps operated to delay the sinking as long as they could on battery power. When the bilge pumps stopped working, water entered the Vessel unchecked, and it sank.

**WHEREFORE**, Plaintiff Axis Reinsurance Company respectfully requests this Court enter Summary Judgment in its favor, against Travis Resmondo, pursuant to Fed. R. Civ. P. 56, and award any other relief the Court deems just and proper.

    Respectfully submitted,

/s/ Michael J. Bradford
**MICHAEL J. BRADFORD**
Florida Bar Number: 184314
**ROBERT B. BIRTHISEL**
Florida Bar Number: 906654
Hamilton, Miller & Birthisel, LLP
100 S. Ashley Drive, Suite 1210
Tampa, Florida 33602
Tel: 813-223-1900; Fax: 813-223-1933
mbradford@hamiltonmillerlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been submitted via CM/ECF to David F. Pope, Esq., Fowler White Boggs Banker, P.A., P.O. Box 1438, Tampa, Florida 33601 on this January 21, 2009.

/s/ Michael J. Bradford
Attorney